# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2010

Lyle W. Cayce
Clerk

No. 09-31056

CHOICE HEALTHCARE, INC.; TOURO INFIRMARY, as Principal of Choice Healthcare, Inc.,

Plaintiffs - Appellants

v.

KAISER FOUNDATION HEALTH PLAN OF COLORADO; KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HEALTH PLAN OF GEORGIA INC.; KAISER FOUNDATION HEALTH PLAN OF SOUTHERN CALIFORNIA HMO; KAISER FOUNDATION HEALTH PLAN OF THE MID ATLANTIC STATES; KAISER PERMANENTE INSURANCE COMPANY,

Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana

Before DAVIS, SMITH, and HAYNES,  Circuit Judges

W. EUGENE DAVIS, Circuit Judge:

In this suit between a Louisiana health care provider and a foreign health insurer, we consider whether the district court erred in finding that it lacked personal jurisdiction over the defendant based on the defendant's payments to plaintiffs for treatment of a small number of defendant's insureds over the

No. 09-31056

course of three years.  For the following reasons, we AFFIRM the judgment of the district court.

I.

Plaintiffs-appellants Choice Health Care, Inc. and Touro Infirmary (collectively, "Choice") are medical services providers which admit and treat patients in New Orleans, Louisiana.  Defendants-appellees Kaiser Foundation Health Plan et al. ("Kaiser") are health maintenance organizations (HMOs) and/or health and disability insurers which provide healthcare services and coverage to individuals.  The Kaiser entities in this case accept enrollment only from insureds living in their service areas, of which Louisiana is not one.[1] Choice entered into a contract with Multiplan, Inc. ("Multiplan"), a preferred provider organization ("PPO"), in which Choice agreed to charge and accept discounted rates from Multiplan clients/payors which participated in the Multiplan PPO.  Kaiser entered into a separate contract with Multiplan, whereby Kaiser became a client/payor of Multiplan and, thus, entitled to the discounted charges agreed to by Choice and all other participating health care providers who had contracted with Multiplan.  According to its website, Multiplan is composed of "more than half a million healthcare providers under contract, an estimated 40 million consumers accessing our network products, and some 70 million claims processed through our network each year." Multiplan – About Us, http://www.multiplan.com/aboutus (last visited August 9, 2010).

---

[1] Defendants describe the multiple defendants and their relationship to the forum as follows: "KFHP, KFHP Colorado, KFHP Georgia, and KFHP Mid-Atlantic are HMOs that only accept applications for enrollment from individuals who live or work in their respective service areas, and Louisiana is not in any of their service areas.  KPIC is a health and disability insurer that offers its indemnity insurance coverage only in conjunction with the HMO coverage offered by its affiliates KFHP, KFHP Colorado, KFHP Georgia, KFHP Mid-Atlantic, and KFHP Northwest, none of which offer comprehensive HMO coverage in Louisiana." Plaintiff does not dispute the above description.

No. 09-31056

During the three year period from 2002 to 2005, Choice provided medical services in New Orleans to approximately fifty[2] of Kaiser's insureds. Choice alleges that these individuals presented Choice with insurance benefit cards that did not display the Multiplan identity or logo as required by Louisiana law. As a result, Choice charged the usual, customary rates for the services instead of the lower rates as provided by Choice and Kaiser's separate contracts with Multiplan. When Kaiser processed the claims, however, it paid Choice the discounted Multiplan rates rather than the rates Choice billed. Choice brought suit against Kaiser for failing to pay the balance, alleging that under LA. REV. STAT. ANN. 40:2203.1B, Kaiser's failure to properly give Choice notice of its membership in the PPO required Kaiser to pay the customary rates.[3]

Kaiser filed a motion to dismiss Choice's suit, arguing that the district court in Louisiana lacked personal jurisdiction. The district court relied primarily on *St. Luke's Episcopal Hosp. v. La. Health Serv. and Indem. Co.*, No. 08-1870, 2009 WL 47125 (S.D. Tex. Jan. 6, 2009), and found that Kaiser's payment of fifty-three claims to Choice in Louisiana over a three-year period was insufficient to permit Choice to establish either general or specific personal jurisdiction.

---

[2] The precise number of both Kaiser's insureds who presented for treatment at Choice's hospitals and the number of payments Kaiser made to Choice for its services is unclear. It is also unclear how the Kaiser insureds who were treated by Choice are distributed among the six Kaiser entities which are defendants. In its brief to this court, Choice stated that fifty-three separate patient accounts were repriced subject to the terms of the Multiplan agreements and that Kaiser tendered payment for these services. At oral argument, counsel for Choice stated that on forty-seven occasions individuals appeared of which thirty-three were paid out by Kaiser.

[3] LA. REV. STAT. ANN. 40:2203.1B reads, in pertinent part:

A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. . . .

Choice timely appealed.

## II.

## A.

This court reviews *de novo* a district court's dismissal for lack of personal jurisdiction. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). A district court sitting in diversity may exercise personal jurisdiction over a defendant to the extent permitted by state law. *Id.* at 242. The Louisiana long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process. *Id.* at 242–44. The exercise of personal jurisdiction comports with due process where: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999) (citations omitted).

The "minimum contacts" prong of the two-part test may be further subdivided into contacts that give rise to "general" personal jurisdiction and "specific" personal jurisdiction. Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). When the contacts are less extensive, the court may still exercise "specific" jurisdiction where a "nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243 (internal quotations omitted). The plaintiff bears the burden of establishing a district court's jurisdiction over a nonresident; that burden is met by a prima facie

No. 09-31056

showing.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citations omitted).

## B.

To show the type of "continuous and systematic" contact required for general jurisdiction, a plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction.  *Id.* at 609–10.  To find general jurisdiction over the defendant, a defendant's contacts with the forum must be substantial; random, fortuitous, or attenuated contacts are not sufficient.  *Id.* at 610.

Plaintiff does not challenge the fact that Kaiser has no offices and owns no property in Louisiana. Kaiser maintains no accounts and pays no taxes in the state.  Further, Kaiser is not licensed to do business in Louisiana and neither conducts nor solicits business in the state.  Choice argues that Kaiser's fifty-three payments over the course of more than three years constituted "continuous and systematic" contact with the forum.  This argument is unavailing as this circuit has found general jurisdiction lacking in instances where a defendant's forum contacts were significantly more substantial than Kaiser's.[4]  Because of

---

[4] For instance, in *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003), the defendant was a transport company which routinely arranged and received shipments to and from Texas.  In addition to its multiple shipments in and out of the forum, the defendant also sent salesmen to the state on a regular basis to develop businesses, negotiate contracts, and service national accounts.  Despite these extensive transactions, this court found that general jurisdiction was lacking:

> In this case, although [defendant] has federal operating authority in Texas, [defendant] . . . has never maintained any kind of business office or records in the state, and has never paid franchise taxes in the state. . . . Even if [defendant's] contacts with the state of Texas have been, in some sense, "continuous and systematic," [defendant's] activities, *in toto,* are clearly not substantial enough to justify subjecting [defendant] to suit in the Western District of Texas based on a theory of general personal jurisdiction.

*Id.* at 381.  *See also Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373–76 (5th Cir. 1987) (holding that the sale of over $250 million of products to seventeen Texas customers over a

No. 09-31056

these limited contacts, Kaiser's intermittent payments to Louisiana over the course of three years are insufficient to establish that Kaiser maintained "continuous and systematic" contact with Louisiana.

C.

A court may exercise specific jurisdiction when: (1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citation omitted). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The cause of action in this case arises from Kaiser's failure to pay Choice the full amount Choice charged following its treatment of Kaiser's insureds. Though the record is unclear as to how many payments Kaiser sent to Choice, there is no dispute that Kaiser did tender some payments to Choice in accordance with the fee schedule contained in the Multiplan agreement to which both parties had independently joined. Thus the forum contacts relevant to our inquiry are (1) the payments Kaiser made to Choice over the course of three years, and (2) Kaiser's contract with Multiplan which allowed Kaiser to receive discounted coverage from participating health care providers.

In finding that it lacked personal jurisdiction over Kaiser, the district court relied on the reasoning in *St. Luke's*. In that case, a Texas hospital sued Blue Cross Blue Shield Louisiana (BCBSLa) over its failure to pay an entire

---

five-year period did not constitute systematic and continuous contacts with Texas because delivery was accepted in Kansas).

hospital bill. 2009 WL 47125, at *1. The bill arose from services the hospital provided to one of BCBSLa's insureds who had sought treatment in Texas. *Id*. Prior to the hospital's treatment of BCBSLa's insured, the hospital sought – and BCBSLa gave – authorization for treatment. *Id*. A month after being discharged, the insured again sought treatment at the Texas hospital and BCBSLa again gave its authorization. *Id*. at *2. BCBSLa tendered partial payment for the hospital's services but disputed some of the costs charged. *Id*. The hospital brought suit against BCBSLa in Texas for the unpaid balance. *Id*.

Before the district court, BCBSLa moved to dismiss for lack of personal jurisdiction. *Id*. BCBSLa was in the business of offering health care insurance to Louisiana residents and issued no policies outside of Louisiana. *Id*. BCBSLa, however, participated in a "Blue Card Program" which allowed BCBSLa to receive whatever discounted rates in-state hospitals offered to in-state Blue Cross Blue Shield insurers. *Id*. The hospital argued that BCBSLa's participation in the Blue Card Program, when considered in conjunction with its authorization of treatment and its partial payment of the Texas-issued bills for the insured's treatment in Texas, provided a sufficient basis for specific personal jurisdiction. *Id*. at *7.

1.

*St. Luke's* considered a number of the issues presented in this case. The court in *St. Luke's* first considered and rejected plaintiff's argument that jurisdiction was proper because defendant authorized the health care provider to treat its insured and partially paid its bill. *Id*. We agree with this analysis. In the instant case, no evidence was presented that Choice obtained advance approval from Kaiser prior to treatment. We are satisfied, however, that Kaiser's payment of a limited number of claims for treatment of Kaiser's insureds, based on the unilateral decisions of those insureds who sought treatment in Louisiana, does not establish purposeful contact between the

7

individual Kaiser defendants and the State of Louisiana. The individual Kaiser defendants covered their respective insureds for treatment in HMOs in the area where the insureds lived and worked. This is where Kaiser directed their insureds for treatment. Kaiser only provided out-of-area coverage for limited treatment to insureds based on emergency care or other urgent health care needs. Viewed in this light, Kaiser's payment to Choice for urgent or emergency treatment of its insureds who visited Louisiana and fortuitously required such treatment cannot qualify as commercial activity purposefully directed toward Louisiana. In making these payments, Kaiser was not attempting to expand sales to Louisiana or otherwise develop commercial activity in Louisiana. Kaiser made the payments because its insureds independently and without encouragement from Kaiser presented to a Louisiana hospital for urgent care while visiting Louisiana.

This analysis is consistent with a number of other cases. In *Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir. 1984), for instance, an East Coast insurer provided automobile insurance payments to plaintiff, a resident of Pennsylvania involved in a car accident in Colorado. *Id*. at 1245. After initially being treated in Colorado, plaintiff sought medical treatment from a specialist in California and made a claim for coverage under the policy. *Id*. When the insurer paid out some but not all of plaintiff's claims, plaintiff filed suit in California. *Id*. at 1246. The insurer moved to dismiss for lack of personal jurisdiction. *Id*. The insurer argued that while it covered residents in a handful of states, it was not registered to do business in California and conducted no business with any California residents. *Id*. Despite these scant contacts, plaintiff argued that jurisdiction over the insurer was appropriate because the insurer purposefully availed itself of California by mailing payments to California and by committing a tort in California in failing to pay plaintiff's claims in full. *Id*. The Ninth Circuit rejected this argument, stating:

No. 09-31056

> The mere fact that [the insurer] communicated with [plaintiff] in
> the state, and may have committed a tort in the exchange of
> correspondence, does not show that [the insurer] purposefully
> availed itself of the privilege of conducting business in California.
> [Plaintiff's] move to California forced [the insurer] to send mail to
> that State concerning her claim.

*Id.* at 1248.[5]

This court has also refused to assert personal jurisdiction over a non-resident insurer even though the insurer is aware that its insureds were seeking treatment in the forum state. In *Perez v. Pan Am. Life Ins. Co.*, No. 96-20241, 1996 WL 511748 (5th Cir. August 20, 1996) (unpublished), a Guatemalan insurance company purported to provide worldwide coverage to its insureds, a couple and their son. Before its insureds entered the forum, defendant insurance company approved the insureds' application to go to Houston, Texas for medical services. *Id.* at \*1. After treatment, the defendant insurance company refused to pay the claim. *Id.* The insureds filed suit in Texas against the insurer to recover benefits under their policy. *Id.* In support of jurisdiction, the insureds argued that the insurer had purposefully availed itself of the benefits and protections of the forum state when the insurer expressly authorized their medical application to seek medical services in Texas. *Id.*

---

[5] Several district courts have found that an insurer's partial payment of hospital bills was insufficient to confer specific personal jurisdiction over the defendant. *See, e.g., Bayada Nurses, Inc. v. Blue Cross and Blue Shield of Mich.*, Civ. No. 08-1241, 2008 WL 2945388 (E.D. Pa. July 30, 2008) (where a Michigan insurer had paid a Pennsylvania nursing-services provider for nearly three years for treating a retired beneficiary who lived in North Carolina, the district court found that the insurer was not subject to specific personal jurisdiction in Pennsylvania, reasoning that the insurer's payments to Pennsylvania were the result of the beneficiary's selection of the nursing provider, not the insurer's "choice to do business with [the provider] in Pennsylvania."); *Berg v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, No. C-93-2752-DLJ, 1993 WL 467859 (N.D. Cal. Nov. 2, 1993) (despite multiple payments by the insurer to the forum, the district court found it lacked personal jurisdiction; in so holding, the district court emphasized that the proper inquiry for personal jurisdiction was whether the insurer had taken affirmative steps to avail itself of benefits from activities related to that State or whether the insurer was merely responding to actions taken by the insured).

No. 09-31056

Despite the insurer's actions, we held that no jurisdiction existed because neither the broad coverage language in the policy nor the mere approval of treatment in Texas constituted "contact" with Texas. *Id.* at *2.

2.

We next consider another argument made by Choice which the court in *St. Luke's* considered. Choice argues that Kaiser's agreement to participate in the Multiplan PPO through which it would receive discounted rates for services rendered by Choice in Louisiana amounts to purposeful availment in the forum. This precise argument was addressed by the court in *St. Luke's*. As explained above, the non-resident insurer BCBSLa in *St. Luke's* belonged to the Blue Card Program, a national membership whereby it received the in-state health care provider's rates offered to fellow Blue Card Program members. The district court in *St. Luke's* reasoned that:

> BCBSLa has not contracted directly with a Texas entity but instead has joined a national organization that allows it to obtain coverage and processing in all of the Blue Card Program members' states. There is no Texas contract, a contract between the parties, or a substantial connection to Texas.

2009 WL 47125, at *9 (internal punctuation omitted).

This is consistent with the reasoning of a California district court which addressed a similar question. In *Resolution Trust Corp v. First of Am. Bank*, 796 F.Supp. 1333 (C.D. Cal. 1992), defendant was a Michigan Bank with no contacts in California. The Michigan bank participated in a national electronic fund clearinghouse system that allowed participating members' clients to obtain wire transfers in foreign states from their home banks through member entities. *Id.* at 1334. The plaintiff, a California-based bank which was also a member of the clearinghouse system, wired money to the defendant's Michigan bank via the clearinghouse system. *Id.* After the California bank realized it had wired too much money, it attempted to debit its clients' accounts in the Michigan bank, but

10

No. 09-31056

the Michigan bank refused to pay the electronic debit. *Id*. The California bank sued the Michigan bank for breach of contract, asserting that specific personal jurisdiction was present "on contractual grounds arising from [the defendant's] membership in the clearinghouse association." *Id*. at 1337. The district court disagreed with plaintiff because:

> [T]he defendant Michigan bank did not contract with any California entity. Both banks simply belong to a clearinghouse service. This does not establish a California contract, a contract between the parties, a substantial connection to California, or purposeful availment of California.

*Id*.

We agree with the analysis in *St Luke*'s and *Resolution Trust Corp*. and conclude that defendant's membership in Multiplan, which in turn contracted with the plaintiff, is not enough to show that defendant purposefully availed itself of the benefits and privileges of the forum state.[6]

D.

Choice argues next that under this court's stream of commerce jurisprudence, Kaiser should be subject to a Louisiana court's jurisdiction because it issued a policy that triggered its obligation to pay policy benefits to plaintiff in Louisiana on behalf of a number of Kaiser insureds. We now address whether the stream of commerce theory applies to this case.

The most definitive word on this subject from the Supreme Court is *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In that case, plaintiffs filed a products liability suit following their injury in an automobile accident in

---

[6] The Texas hospital in *St. Luke's* raised a new breach of contract theory in its opposition to the defendant's motion to dismiss, the effect of which would have preempted under ERISA the hospital's state breach of contract claims against BCBSLa. 2009 WL 47125, at *11. Whether specific personal jurisdiction was present in *St. Luke's* was significantly affected by the content of the hospital's complaint. Ultimately, the district court permitted the hospital to amend its complaint and to assert an ERISA claim. *Id*. at *12. Despite the court's disposition of the case, we find the court's analysis to be instructive.

No. 09-31056

Oklahoma in a car they purchased in New York. *Id*. at 288. They sued in Oklahoma, alleging that design defects in the car caused the fire and resulting injuries. *Id*. The Supreme Court rejected the plaintiffs' argument that the defendants had the necessary purposeful contact with Oklahoma to be sued in that state even though it was foreseeable that the car could cause injury in Oklahoma because of its mobile nature. *Id*. at 298.

The *World-Wide Volkswagen* Court described the nature of the case in which the stream of commerce theory is recognized to support personal jurisdiction:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id*. at 297–98 (citation omitted).

The Court concluded that where the defendant auto dealer had not regularly sold cars to Oklahoma customers, either directly or through others, jurisdiction could not be based on the fortuitous circumstance that the purchaser of an automobile in New York happened to suffer an accident while passing through Oklahoma. *Id*. at 298. The Court acknowledged that it may be foreseeable that an automobile, by its very design and purpose, could cause injury in Oklahoma. *Id*. at 295. The Court concluded, however, that forseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. *Id*.

12

No. 09-31056

The Supreme Court again addressed the stream of commerce theory in *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102 (1987). The question presented in that case was whether a Japanese manufacturer of a valve assembly for a motorcycle tire was subject to jurisdiction in California arising out of an accident in that state. *Id*. at 105. The motorcycle tire in which the defendant's valve was incorporated was manufactured and assembled in Taiwan. *Id*. The tire was incorporated into a Honda motorcycle that was sold in California. *Id*. The Court split in a 4-4-1 vote on the question of whether forseeability alone was enough to subject the defendant manufacturer to jurisdiction in California based on the stream of commerce theory. Justice O'Connor determined that forseeability alone was insufficient. *Id*. at 112–13 (plurality opinion). Justice Brennan concluded that the defendant's knowledge that the product, once introduced into the market, would likely enter the forum state was sufficient to meet the purposeful availment requirement. *Id*. at 116–17 (Brennan, J., concurring).

Some circuits follow Justice O'Connor's analysis while other circuits follow Justice Brennan's analysis. This circuit has adopted Justice Brennan's analysis.[7] For present purposes, the important feature of Justice Brennan's concurrence is the nature of the case to which the stream of commerce theory applies to permit a plaintiff to obtain personal jurisdiction over a foreign resident. In discussing the justification for subjecting a defendant to personal jurisdiction under this theory, Justice Brennan stated:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacturer to distribution to retail sale. As long as a participant

---

[7] *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993) ("In the years after *Asahi*, the Fifth Circuit has continued to follow the original 'stream-of-commerce' theory established in the majority opinion of *World-Wide Volkswagen*, and has rejected the 'stream-of-commerce-plus' theory advocated by the *Asahi* plurality.").

No. 09-31056

in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor would the litigation present a burden for which there is not corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State or engages in additional conduct directed toward that State.

*Id.* at 117 (Brennan, J., concurring).

The facts of this case simply do not fit the stream of commerce model described by Justice Brennan. Unlike the cases where the stream of commerce theory has been applied, this is not a products liability case or similar case where a defendant places a product in the stream of commerce as part of a sales or distribution network designed to market its products nationwide (or at least outside of its home state) where it would derive financial benefit from sales in the forum. *See, e.g.*, *Johnston*, 523 F.3d 602 (5th Cir. 2008); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (5th Cir. 2006). Deriving revenue from such commercial activity is the quid pro quo for requiring the defendant to suffer a suit in the foreign forum. Thus the doctrinal underpinning justifying the use of the stream of commerce theory to support personal jurisdiction does not apply. Additionally, the independent action of the insureds in traveling to the forum state to seek treatment outside of their coverage area is arguably analogous to the driver of the automobile in *World-Wide Volkswagen*.[8] This

---

[8] As addressed above in *Hunt*, the insurer paid for medical treatment in California after the plaintiff moved from Pennsylvania to California. In finding no personal jurisdiction over the insurer, the Ninth Circuit stated:

In our view, [plaintiff]'s decision to move to California cannot be attributed to [the insurer]. We sympathize with [plaintiff]'s contention that she had to come

14

No. 09-31056

independent action by the insured to obtain emergency care in Louisiana, unrelated to any marketing scheme by Kaiser, is inconsistent with the notion that Kaiser made purposeful commercial contact with Louisiana for the purpose of increasing its revenue.[9]

We therefore conclude that the stream of commerce theory does not apply and is unavailable to Choice to assist it in establishing personal jurisdiction over defendants.

III

For the foregoing reasons, we agree with the district court that plaintiffs failed to establish personal jurisdiction over the defendants. The judgment of the district court is therefore affirmed.

AFFIRMED.

---

to California in order to obtain rehabilitative treatment. . . . To characterize her decision as an intentional action by [the insurer], for purposes of meeting the purposeful availment requirement of due process, would frustrate the very policy behind that requirement: ensuring that a "*defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

728 F.2d 1244, 1247 (9th Cir. 1984) (quoting *World-Wide Volkswagen*, 444 U.S at 297) (emphasis in original).

[9] It is true that this circuit has extended the stream of commerce analysis outside of the products liability context. But these cases are closely related to products liability cases as they all concern products introduced into the stream of ommerce by non-resident defendants who benefit from the product's final sale in the forum. *See, e.g.*, *Luv N' Care*, 438 F.3d 465 (stream of commerce analysis applied to assert personal jurisdiction for copyright infringement claim over non-resident manufacturer; the non-resident manufacturer's infringing product was sold to Wal-Mart with the hope and anticipation that its product would be distributed to Wal-Marts across the country); *Nuovo Pignone, SpA v. Storman ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002) (personal jurisdiction over the foreign shipper for a breach of contract claim when foreign shipper sent defective crane into the forum which caused injury to forum resident's product the shipper was delivering; foreign shipper was "a voluntary member of economic chain that brought product to Louisiana"); *Gulf Consolidated Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071 (5th Cir. 1990) (applying the stream of commerce principle to a breach of warranty action when the distributor sent the component part casing to a distributor with the expectation it would be sold to all states).

15