HIGGINBOTHAM, J.
|sIn this appeal, a Louisiana hospital challenges a judgment that dismisses its claims against a nonresident travel-health insurance underwriter for lack of personal jurisdiction. For the following reasons, we amend the judgment and affirm as amended.
FACTUAL AND PROCEDURAL BACKGROUND
The pertinent facts surrounding this case are undisputed.[1] Edith Ruth Dill and Brian Dill are citizens of the United Kingdom, from Lancashire, England. The Dills purchased a travel-health insurance policy from a British corporation, Atlas Travel Insurance Services Limited, d/b/a Atlas Direct (“Atlas”), with a coverage period of February 11, 2006, to January 11, 2007. White Horse Insurance Ireland, Ltd. (“White Horse”), an Irish corporation, underwrote the insurance policy, providing worldwide coverage that expressly included the United States. Medical claims made under the policy in North America were administered by a Canadian corporation, Global Excel Management, Inc. (“Global Excel”).
The Dills were vacationing in south Louisiana in mid-November 2006 when Ms. Dill became extremely ill. She was admitted for urgent treatment of a severe medical condition that required emergency surgery and hospitalization for further treatment at NorthShore Regional Medical Center, L.L.C., d/b/a NorthShore Regional Medical Center (“NorthShore”) in Slidell, Louisiana.[2] Ms. Dill remained hospitalized at NorthShore for more than two months, until she was transported via |4air ambulance to a hospital in England on January 24, 2007. The final cost of Ms. *159 Dill’s medical treatment at NorthShore was $1,256,229.08.
In response. to NorthShore’s request, White Horse, through Atlas and/or Global Excel, verified the Dills’ travel-health insurance coverage and initially authorized and remitted a partial payment of $309,498.31, which was sent by Global Excel to NorthShore on behalf of White Horse on February 13, 2007. Because no other payments were made despite written demand, NorthShore filed suit on November 13, 2009, for the balance due on open account for medical services rendered, plus judicial interest, attorney fees, and costs.[3] NorthShore named the Dills, Atlas Travel, and Global Excel as defendants and subsequently, on February 3, 2010, added White Horse as a defendant in a supplemental and amending petition.
The record does not reflect that any defendant has filed an answer. However, White Horse filed a declinatory exception raising the objection of lack of personal jurisdiction in response to NorthShore’s petition.[4] White Horse maintains that it is an “Irish underwriter of an English travel insurance policy issued by an English insurance company to two ... English travelers.” White Horse further asserts that it has absolutely no contact with Louisiana, does not solicit or conduct business, advertise, or underwrite any policies of insurance in Louisiana, and has no employees or offices in Louisiana. Therefore, White Horse argues that the exercise of personal jurisdiction over it is unconstitutional and unsupported by law. In support of its exception, White Horse offers two sworn affidavits of its Finance Director, David Gleeson (“Gleeson”), declaring, in pertinent part, that White Horse (1) is licensed to do business in Ireland, not Louisiana; (2) has a registered office in | ¡¡Dublin, Ireland, not Louisiana; (3) does not underwrite any policies of insurance or insure any risks in Louisiana; (4) does not directly advertise in Louisiana; (5) has no officers, managers, directors, shareholders, or employees-located in Louisiana; (6) does not transact any business in Louisiana; and (7) has had no contact with North-Shore regarding Ms. Dill.[5]
In contrast, NorthShore contends that White Horse authorized. Ms. Dill’s medical care through the North American claims’ administrator, Global Excel, by verifying the insurance coverage and by making a significant partial payment toward Ms. Dill’s medical expenses at NorthShore in Louisiana. NorthShore offers no evidence as to the timing or the form of communication — whether it was by telephone call, fax, or letter — regarding the verification of coverage, but argues that the verification and partial payment constitute sufficient minimum contacts for a finding of personal jurisdiction over White Horse in Louisiana. NorthShore also asserts that White Horse could reasonably foresee or anticipate that it might be subject to a Louisiana court’s jurisdiction, since it was the underwriter of a travel-health insurance policy that was issued with a worldwide coverage area that specifically included travel to the United States.
*160 The trial court heard the exception on May 25, 2011, issued reasons for judgment on June 24, 2011, and signed a judgment on July 20, 2011, sustaining the exception and dismissing NorthShore’s claims against White Horse with prejudice. In written reasons, the trial court relied primarily on federal jurisprudence in its discussion of the constitutional requirements for the exercise of personal jurisdiction over nonresident defendants. Ultimately, the trial court particularly emphasized a federal district court decision, St. Luke’s Episcopal Hosp. v. Louisiana Health Service & Indem. Co., No. H-08-1870, 2009 WL 47125 (S.D Tex.l/6/09), and the cases cited therein, to find that the facts “at best, point to a single contact” by White Horse with Louisiana. Relying on the reasoning set forth in St. Luke’s Episcopal Hosp., the trial court held that the single act of authorizing a partial payment to NorthShore was not a sufficient contact, nor an affirmative act that amounted to a “purposeful availment” of the benefits of conducting activities in Louisiana, so as to subject White Horse to personal jurisdiction in Louisiana. The trial court further found that White Horse’s act of authorizing partial payment to NorthShore was “simply a response to an insured’s [unilateral] decision to travel to Louisiana and seek medical attention while here as a result of illness.”
NorthShore appeals, urging three assignments of error: (1) the trial court erred in determining that there was no constitutional basis for exercising personal jurisdiction over White Horse; (2) alternatively, the trial court erred in prematurely granting White Horse’s exception of lack of personal jurisdiction; and (3) alternatively, a proper jurisdictional analysis for travel insurance policies issued by foreign insurers and underwriters requires new law or a different application of existing law.
MOTION TO STRIKE
In addition to its brief in opposition to NorthShore’s assignments of error, White Horse filed a motion to strike NorthShore’s appellate brief or portions of the brief. White Horse complains that NorthShore’s brief does not cite to record references and raises new arguments in assignments of error two and three for the first time on appeal, in violation of Uniform Rules — Courts of Appeal, Rule 2-12.4 and Rule 1-3, respectively. We find that NorthShore’s failure to cite references in the record by page number is not of such significance that it compels us to strike its brief. Additionally, all of NorthShore’s assignments of error are related to the trial court’s reasons for judgment and the merits of the ultimate legal issue before this 17court — whether a Louisiana state court can properly exercise personal jurisdiction over White Horse under the facts of this case. The sanction permitted to be imposed for a non-conforming brief is left to our discretion. Williams v. Fischer, 439 So.2d 1111, 1112 (La.App. 1st Cir.1983). When reviewing the trial court’s legal analysis or conclusion, we must render any judgment which is just, legal, and proper upon the record on appeal, regardless of whether a particular theory was made, argued, or decided by the trial court. See La. C.C.P. art. 2164. Under the circumstances of this case, we find that striking NorthShore’s brief or portions of the brief would be unreasonably harsh. Accordingly, we deny White Horse’s motion to strike.
LAW AND ANALYSIS
In reviewing a judgment on an exception of lack of personal jurisdiction, the factual findings underlying the judgment are reviewed for manifest error. Bridges v. Mosaic Global Holdings, Inc., 2008- *161 0113 (La.App. 1st Cir.10/24/08), 23 So.3d 305, 314, writ denied, 2008-2783 (La.2/20/09), 1 So.3d 496. However, the application of established rules of law to the facts involves a purely legal question. Id. Thus, appellate courts use a de novo standard of review to determine the legal issue of whether a Louisiana court may exercise personal jurisdiction over a nonresident. Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 2006-1736 (La.4/11/07), 954 So.2d 120, 125; Broussard v. Diamond Aircraft Industries, Inc., 2010-1611 (La.App. 1st Cir.5/3/11), 65 So.3d 187, 189. Based on our review of the record, we find no real dispute as to the facts related to the jurisdictional issue before us, and therefore, we review this purely legal issue de novo.
We begin our analysis by examining Louisiana’s “long-arm” statute, La. R.S. 13:3201, which controls when a Louisiana court may assert personal jurisdiction over a nonresident defendant. Louisiana Revised Statutes 13:3201 was | ^amended in 1987 to extend personal jurisdiction under Louisiana’s long-arm statute to the fullest limits allowed by due process. Southeast Wireless Network, 954 So.2d at 124. Since the 1987 amendment, the sole inquiry into jurisdiction over a nonresident in Louisiana is whether the assertion of personal jurisdiction complies with constitutional due process. Fox v. Board of Sup’rs of Louisiana State University and Agr. and Mech. College, 576 So.2d 978, 983 (La.1991).
The Louisiana long-arm statute, La. R.S. 13:3201, provides for. the exercise of personal jurisdiction over a nonresident defendant as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
' (1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer’s marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a *162 nonresident on any basis 19consistent with the constitution of this state and of the Constitution of the United States.
Personal jurisdiction may be asserted as long as due process is not offended. In Bridges, 23 So.3d at 314-15, this court outlined the due process test as it was first enunciated in Int’l Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), stating that due process requires the nonresident defendant to have certain “minimum contacts” with the forum state, such that maintaining a suit against the defendant does not offend traditional notions of fair play and substantial justice. Finding minimum contacts is the first part of what has evolved into a two-part test. See Broussard, 65 So.3d at 190. Once minimum contacts are established, the second part of the due process test involves consideration of the contacts in light of other fairness factors to determine whether it would be reasonable to require the nonresident defendant to defend the lawsuit in the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78, 105 S.Ct. 2174, 2184-85, 85 L.Ed.2d 528 (1985).
The minimum contacts prong of the two-part due process test is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Broussard, 65 So.3d at 190 (quoting A & L Energy, Inc. v. Pegasus Group, 2000-3255 (La.6/29/01), 791 So.2d 1266, 1271, cert. denied, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) (citations omitted)). However, this purposeful availment must be such that the defendant “should reasonably anticipate being haled into court in the forum state.” Id. The rationale behind the “purposeful availment” requirement is to ensure that the nonresident defendant will not be “haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person.” Id. (Emphasis added.)
| Additionally, in Broussard, 65 So.3d at 191, we recognized the well-established distinction between two types of personal jurisdiction — “general” and “specific” jurisdiction. A state has specific jurisdiction over a defendant when the suit arises out of or is related to the defendant’s contacts with the forum state and the defendant purposefully avails itself of the privilege of conducting activities in the forum state. See Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). A state has general jurisdiction over a defendant when the defendant is domiciled in the forum state or its activities there are substantial or continuous and systematic, even though the contact with the forum state is not related to the cause of action. Helicopteros, 466 U.S. at 414-16, 104 S.Ct. at 1872. See also Omega Hosp., L.L.C. v. Board of Trustees of State of North Carolina Teachers’ and State Employees’ Comprehensive Major Medical Plan, No. 08-1575, 2008 WL 4286757, at *3 (E.D.La.9/16/08).
The evidence presented in the record before us reveals that White Horse does not have sufficient minimum contacts to satisfy the requirements for specific jurisdiction, and even less so for general jurisdiction. In fact, White Horse does not have any contacts with Louisiana aside from the alleged communication regarding verification of insurance coverage and the partial payment that was accomplished through the claims administrator, Global Excel. That limited contact/communica *163 tion, however, was not solicited or initiated by White Horse. Instead, the verification was made solely in response to North-Shore’s initiating an inquiry about Ms. Dill’s health insurance coverage, and was the product of the mere fortuity that NorthShore is located in the state where the Dills unilaterally decided to travel and where Ms. Dill happened to seek medical treatment after becoming ill. Compare Omega Hosp., 2008 WL 4286757, at *4 (quoting | nMoncrief Oil Int’l, Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir.2007), “[r]andom, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction”).
Insurers are obligated to carry out the insurance contract no matter where treatment is sought; therefore, the fact that White Horse acknowledged (through its claims’ administrator) its obligation to pay pursuant to the insurance plan if Ms. Dill sought treatment at NorthShore is not purposeful availment. See Whittaker v. Medical Mutual of Ohio, 96 F.Supp.2d 1197, 1200 (D.Kansas 2000). To allow the exercise of personal jurisdiction on this slight contact, which was initiated. by a third party, would offend the traditional notions of fair play and substantial justice. See Perez v. Pan Am. Life Ins. Co., 96 F.3d 1442, 1996 WL 511748, at *2 (5th Cir.8/20/96)(unpublished).
NorthShore makes much of the fact that the subject of the verification communication process was coverage under a travel-health insurance policy. Thus, North-Shore argues that all parties contemplated that the Dills would travel and could possibly have a medical claim anywhere in the world where the policy provided coverage, including the United States. However, NorthShore does not provide any legal authority for its contention that White Horse is essentially conducting business or maintaining sufficient contact in whatever forum where the Dills choose to travel and possibly incur medical expenses. The only contact that White Horse is alleged to have had with Louisiana was directly related to the Dills’ unilateral decision to travel to Louisiana. To allow such a contact to satisfy the purposeful availment requirement does not properly focus on the intentional conduct of the defendant, White Horse. See Alaska Regional Hosp. v. Amil Intern. Ins. Co., No. A03-177 CV (JWS), 2003 WL 24085347, at *3 (D.Alaska 11/5/03)(unpublished).
I^The foreseeability that is critical in the due process analysis of minimum contacts is whether the defendant’s intentional conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). NorthShore fails to provide evidence to rebut Gleeson’s affidavits and to establish that White Horse engaged in affirmative or proactive conduct in Louisiana, such as attempting to expand sales to Louisiana or otherwise develop commercial activity in Louisiana. Compare Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo., 615 F.3d 364, 370 (5th Cir.2010). White Horse authorized the partial payment because the insured, Ms. Dill, independently and without encouragement from White Horse, presented to NorthShore for urgent care and extensive medical treatment while visiting Louisiana. Compare Id.
While we agree that White Horse, as a travel-health insurance underwriter, could reasonably anticipate that the Dills would travel to some destination in the United States and possibly need medical treatment while in the United States, there is no reason for White Horse to have reasonably anticipated being sued in Louisiana. White Horse had no reason to think that *164 the terms of the policy it had underwritten would be disputed in whatever forum the Dills happened to be in when one of them needed medical attention. See Hall v. Scott, 416 So.2d 223, 230 (La.App. 1st Cir.), writ granted. 420 So.2d 978 (La.1982) (“the fact that the insured person would foreseeably travel to another state and be involved in litigation ... was not a sufficient contact to satisfy [d]ue [p]rocess requirements on a suit in contract”). See also Alaska Regional Hosp., at *4. A health insurance policy is typically sued upon where the insured resides. Id.
The cause of action in this case arises from the insurers’ failure to pay the full amount that NorthShore charged following its treatment of Ms. Dill. There is [1sno dispute that the insurers tendered a significant partial payment to NorthShore through the claims administrator, Global Excel. However, the weight of federal jurisprudence holds that the act of verifying insurance coverage and of making partial payments by a nonresident insurer is insufficient to confer personal jurisdiction. See Choice Healthcare, 615 F.3d at 369-71 (discussing federal district court decisions refusing to assert personal jurisdiction even when the insurer makes more than one payment or the insurer is aware that the insured is seeking treatment in the forum state). See also St. Luke’s Episcopal Hosp., at *4-7, and Whittaker, 96 F.Supp.2d at 1200.
NorthShore’s cause of action is ultimately based in contract, relying on an insurance policy that the Dills negotiated and executed with Atlas and White Horse in England.[6] The record does not contain evidence of, or even an allegation that, the Dills executed an assignment of benefits to NorthShore. Thus, the coverage dispute is ultimately between the Dills and their insurers, Atlas and White Horse, all of whom are nonresidents of Louisiana. By underwriting the'insurance policy,. White Horse has not purposefully availed itself of the privilege of conducting business or activities in Louisiana, so as to subject itself to suit on open account for medical services rendered to its insured in Louisiana. See Alaska Regional Hosp., at *4-5. We conclude that White Horse has insufficient contacts with Louisiana to allow North-Shore’s suit to continue in this forum. The trial court correctly |i4sustained White Horse’s exception. NorthShore’s first assignment of error is without merit.
We also find no merit in either of NorthShore’s alternative assignments of error. NorthShore contends that the trial court should have allowed more time for NorthShore to amend its petition to cure *165 the jurisdictional defect as to White Horse. The decision to allow a plaintiff to amend its petition is within the discretion of the trial court. See Mentz Const. Services, Inc. v. Poche, 2010-0904 (La.App. 4th Cir.12/22/10), 54 So.3d 1221, 1225. We do not find that the trial court abused its discretion in this regard. NorthShore was given the opportunity, but failed to conduct jurisdictional discovery or to offer any evidence of activity on the part of White Horse to controvert the grounds of the exception at the hearing on the declinatory exception, which had already been continued several times. Thus, NorthShore failed to adequately establish a right to further delay to attempt to remove the grounds of the objection, and this alternative assignment of error is without merit. See Smith Stag, L.L.C. v. Wilson & Meyer Custom Theater Interiors, L.L.C, 2008-1251 (La.App. 4th Cir.2/18/09), 6 So.3d 921, 925; Mitchell v. Terrebonne Parish School Board, 2002-1021 (La.App. 1st Cir.4/2/03), 843 So.2d 531, 534, writ denied, 2003-2275 (La.11/26/03), 860 So.2d 1135.
However, we do find that the trial court’s dismissal of White Horse “with prejudice” was improper. The trial court did not have the authority to issue a judgment that bars NorthShore from bringing its cause of action against White Horse as a separate claim in a proper forum. See A Fuselier Bonding Service, Inc. v. Perez, 2010-1416 (La.App. 3d Cir.4/6/11), 62 So.3d 296, 302. Accordingly, we amend the trial court’s judgment to reflect that North-Shore’s claims against White Horse are dismissed “without prejudice.” See Smith Stag, L.L.C, 6 So.3d at 925 (dismissing the claims without prejudice allows the plaintiff 11sto re-file its suit against the defendant in a proper forum, so as to confer personal jurisdiction).[7]
As for NorthShore’s final alternative assignment of error suggesting that this court apply a new approach to analyzing personal jurisdiction in the context of nonresident insurers marketing travel-health insurance policies, we decline the invitation to overhaul the traditional, well-established framework outlined in this opinion for analyzing personal jurisdiction. NorthShore’s contention that it is necessary to adopt a new approach or new law for personal jurisdiction issues involving travel-health insurers is more properly addressed by the Legislature. This alternative assignment of error is without merit.
CONCLUSION
For all of the assigned reasons, White Horse’s motion to strike portions or the entirety of NorthShore’s brief is denied. The trial court’s judgment sustaining White Horse’s declinatory exception raising the objection of lack of personal jurisdiction and dismissing NorthShore’s claims against White Horse is amended to dismiss NorthShore’s claims “without prejudice,” and is affirmed as amended. All costs of this appeal are assessed to plaintiff/appellant, NorthShore Regional Medical Center, L.L.C. d/b/a NorthShore Regional Medical Center.
MOTION TO STRIKE DENIED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED.

. Much of the factual background is taken from the allegations in the petition, which are accepted as true in the context of an exception raising the objection of personal jurisdiction, unless contradicted by opposing affidavits. See Lifecare Hospitals, Inc. v. B & W Quality Growers, Inc., 39,065 (La.App.2d Cir. 10/27/04), 887 So.2d 624, 630, writ denied, 2004-2935 (La.2/4/05), 893 So.2d 872.

. NorthShore's brief indicates that the hospital is currently known as Tenet 100 Medical Center Slidell, L.L.C. However, because the record does not contain evidence of the name change and all pleadings, as well as the judgment, refer to the hospital as NorthShore Regional Medical Center, L.L.C., d/b/a/ North-Shore Regional Medical Center, for clarity and simplicity, we refer to the plaintiff as "NorthShore.”

. A suit on open account is subject to a prescriptive period of three years. See La. C.C. art. 3494(4).

. The parties refer to the exception as dilatory rather than declinatory; however, we note that an exception to the jurisdiction of the court is a declinatory exception. See La. C.C.P. arts. 923 and 925(A)(5).

.The record contains two Gleeson affidavits; one is dated June 18, 2010, arid the other is dated January 18, 2011. ■ Both affidavits were attached as exhibits to White Horse's original and supplemental memoranda filed in the record in support of its exception of. lack of personal jurisdiction.

. The record is devoid of evidence or allegations that NorthShore’s suit is the result of some tortious act, such as economic loss caused by negligent misrepresentation, committed in Louisiana by White Horse against NorthShore. But even if there was evidence of the tort of negligent misrepresentation, it appears that any cause of action in tort would be prescribed in this case. Even so, several federal cases have held that the mere fact that the nonresident insurer communicated with the healthcare provider in the forum state, and may have committed a tort in the exchange of correspondence, does not show that the insurer purposefully availed itself of the privilege of conducting business in the forum state. See Choice Healthcare, 615 F.3d at 370; Hunt v. Erie Ins. Group, 728 F.2d 1244, 1247-48 (9th Cir.1984). But see Lifecare Hospitals, Inc. v. B & W Quality Growers, Inc., 39,065 (La.App. 2d Cir.10/27/04), 887 So.2d 624, 632, writ denied, 2004-2935 (La:2/4/05), 893 So.2d 872 (where personal jurisdiction was conferred against a nonresident insurer whose agent negligently misrepresented the insured’s insurance coverage to a healthcare provider, thereby causing economic loss). However, we need not resolve the personal jurisdiction issue in the tort context, because the facts of the case sub judice are limited to a cause of action based in contract.

. We note that although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, it does terminate the instant suit with respect to White Horse. See La. C.C.P. art. 1673; Batson v. Cherokee Beach and Campgrounds, Inc., 470 So.2d 478, 480 (La.App. 1st Cir.1985).