STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1095

KIMBERLY L. ROBINSON, SECRETARY OF THE
DEPARTMENT OF REVENUE, STATE OF LOUISIANA

VERSUS

JEOPARDY PRODUCTIONS, INC.

Judgment Rendered: **OCT 2 1 2020**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 653,803

Honorable William A. Morvant, Judge Presiding

* * * * *

April L. Watson
Metairie, LA

Antonio C. Ferachi
Baton Rouge, LA

Attorneys for Plaintiff-Appellant,
Kimberly L. Robinson, Secretary of
the Department of Revenue, State of
Louisiana

Jesse R. Adams, III
Andre B. Burvant
New Orleans, LA

Attorneys for Defendant-Appellant,
Jeopardy Productions, Inc.

* * * * *

BEFORE: McCLENDON, HIGGINBOTHAM, AND LANIER, JJ.

McClendon, J. concurs in result.
by TMH

**HIGGINBOTHAM, J.**

In this appeal, Kimberly L. Robinson, in her capacity as Secretary of the Louisiana Department of Revenue (LDR), challenges a judgment that dismisses its petition to collect corporate and franchise taxes from a non-resident television production company, Jeopardy Productions, Inc. (Jeopardy), for lack of personal jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed. Jeopardy is a part of the television division of Sony Entertainment Group, which oversees game shows such as "Jeopardy!" Jeopardy's principal place of business is in Culver City, California, where the licensing and day-to-day business operations for the game show occur. The licensing and distribution agreements pertain to Jeopardy's intellectual property (copyrighted, trademarked, or patented products). The agreements are between Jeopardy and various third parties that negotiate the broadcasting of the "Jeopardy!" game show at television stations across the United States, as well as agreements for merchandise reflecting the Jeopardy trademark or logo, such as mugs, clothing, video games, and slot machines. All of Jeopardy's business decisions concerning the licensing and distribution agreements are made in California, where Jeopardy's business and bank records are kept. Jeopardy is incorporated in Delaware and is registered to do business in California.

Jeopardy's sole source of revenue is in the form of royalties from licensing and distribution agreements. The pertinent agreements at issue in this appeal are between Jeopardy and: (1) CBS Television Distribution Group (CBS)[1], who has the exclusive right to sublicense and distribute the "Jeopardy!" game show across the country; (2) International Gaming Tech (IGT), who has the right to place Jeopardy's trademark/logo on gaming machines manufactured by IGT and placed into gaming

---

[1] Jeopardy initially entered into the licensing/distribution agreement with King World Productions, Inc., which is now CBS.

venues across the country; and (3) other manufacturers and distributors who have exclusive licenses to use the "Jeopardy!" game show trademark/logo, designs, etc. on various merchandise that is marketed around the country. CBS has independently contracted with seven television stations in Louisiana to broadcast the "Jeopardy!" game show. IGT has independently contracted to place several gaming machines reflecting the Jeopardy trademark/logo in some Louisiana casinos and truck stops.

During the tax years 2011-2014, Jeopardy earned a total of $3,622,595 in royalty income from licensing agreements attributed to Louisiana. LDR filed suit against Jeopardy to collect franchise and corporate taxes on that royalty income. Jeopardy filed a declinatory exception raising the objection of lack of personal jurisdiction, arguing that it did not transact any business in Louisiana and that Jeopardy's contacts through unrelated third parties in Louisiana do not rise to the level of minimum contacts required by due process of law. Jeopardy maintains that it merely received royalty income from the licensing of its intellectual property by independent third parties that are not agents of Jeopardy.

At the trial on Jeopardy's exception held on May 3, 2019, Senior Vice-President of Global Marketing and Brand Management for Sony Pictures Television Games and Game Shows, Suzanne Prete, testified on behalf of Jeopardy. Her testimony was uncontradicted that Jeopardy had absolutely no control over where CBS and IGT distributed the "Jeopardy!" game show and merchandise. Those licensing decisions belonged exclusively to CBS and IGT. She indicated that each licensing agreement clearly provided that Jeopardy was not in a partnership, joint venture, or agency relationship with CBS or IGT. Prete testified that all business decisions concerning the licensing agreements for Jeopardy were made in California where Jeopardy maintains its principal place of business. Prete acknowledged that Sony also maintains an office in New York. Prete further testified that Jeopardy had no privity of contract with any of the third-party television stations with whom CBS contracted or the third-party businesses where IGT negotiated contracts to place

3

merchandise and/or gaming machines with the Jeopardy trademark/logo. Prete stated that Jeopardy did not have any direct activity in Louisiana and did not have any licensing or distribution agreements with Louisiana businesses or individuals. Conversely, LDR's argument at the trial on the exception centered on the fact that Jeopardy received some of its revenue from royalty income that was ultimately derived from third-party licensees located in Louisiana. Prete testified that Jeopardy reported its share of royalty income on tax returns filed in both California and New York.

After the trial, the trial court immediately ruled on Jeopardy's exception. In oral reasons, the trial court found that Jeopardy had no physical presence in Louisiana; Jeopardy made no business decisions in Louisiana; Jeopardy did not carry out any direct business activity in Louisiana; Jeopardy had no employees in Louisiana; and Jeopardy did not render any services in Louisiana. After noting that there was no question that CBS and IGT conducted business in Louisiana with independent third-parties, the trial court stated that the third-party activities constituted arms-length transactions that did not support a decision that Jeopardy purposefully directed business on its behalf in Louisiana. The trial court concluded that to maintain personal jurisdiction over Jeopardy in Louisiana would violate the notions of fair play and substantial justice. Therefore, the trial court signed a judgment on May 15, 2019, granting Jeopardy's exception raising the objection of lack of personal jurisdiction and dismissing LDR's petition. LDR appeals.

## LAW AND ANALYSIS

Appellate courts review factual findings underlying a judgment on an exception of lack of personal jurisdiction for manifest error. **Northshore Regional Medical Center, L.L.C. v. Dill**, 2011-2271 (La. App. 1st Cir. 6/8/12), 94 So.3d 155, 160, writ denied, 2012-1494 (La. 10/8/12), 98 So.3d 862. However, there is no real dispute as to the facts related to the jurisdictional issue in this case. The application of established rules of law to the facts involves a purely legal question. Thus, we

4

will use a *de novo* standard of review to determine the legal issue of whether a Louisiana court may exercise personal jurisdiction over the nonresident, Jeopardy, in this matter. See **Id.**, 94 So.3d at 161.

The Louisiana long-arm statute, La. R.S. 13:3201[2], controls when a Louisiana court may assert personal jurisdiction over a nonresident defendant. Louisiana's long-arm statute extends personal jurisdiction to the fullest limits allowed by constitutional due process. **Southeast Wireless Network, Inc. v. U.S. Telemetry Corp.**, 2006-1736 (La. 4/11/07), 954 So.2d 120, 124. Personal jurisdiction may be asserted as long as due process is not offended. **Northshore Regional Medical Center**, 94 So.3d at 162. Due process requires the nonresident defendant to have certain "minimum contacts" with the forum state, such that maintaining a suit against the defendant does not offend traditional notions of fair play and substantial justice. **International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement**, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The exercise of finding minimum contacts has evolved into the first of a two-part test. **Northshore Regional Medical Center**, 94 So.3d at 162. The second part of the due process test involves consideration of the minimum contacts in light of other fairness factors to determine whether it would be reasonable to require the nonresident defendant to defend the lawsuit in the forum state. **Id.**

---

[2] Louisiana Revised Statutes 13:3201 provides in pertinent part:

    A.  A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

        (1) Transacting any business in this state.

        (2) Contracting to supply services or things in this state.

                * * *

    B.  In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

The minimum contacts prong of the due process test is satisfied by a single act or actions where the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." **Broussard v. Diamond Aircraft Industries, Inc.,** 2010-1611 (La. App. 1st Cir. 5/3/11), 65 So.3d 187, 190 (quoting **A & L Energy, Inc. v. Pegasus Group**, 2000-3255 (La. 6/29/01), 791 So.2d 1266, 1271, cert. denied, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) (citations omitted)). The purposeful availment factor must be such that the nonresident defendant should "reasonably anticipate" being haled into court in the forum state. **Id.** The rationale of the purposeful availment requirement is to ensure that the nonresident defendant will not be brought into a jurisdiction solely as a result of a "random, fortuitous, or attenuated contact, *or by the unilateral activity of another party or a third person*." **Id.** (Emphasis added.)

There is a well-established distinction between two types of personal jurisdiction – "general" and "specific." **Broussard,** 65 So.3d at 191. Specific jurisdiction is when the lawsuit arises out of or is related to the nonresident defendant's contacts with the forum state and the defendant purposefully avails itself of the privilege of conducting activities in the forum state. **Northshore Regional Medical Center,** 94 So.3d at 162. General jurisdiction is when the defendant is actually domiciled in the forum state or its activities there are substantial or continuous and systematic, even though the contact with the forum state is not related to the cause of action in the lawsuit. **Id.**

Our review of the evidence and pleadings reveals that the nonresident defendant, Jeopardy, does not have sufficient minimum contacts to satisfy the requirements for specific jurisdiction, and even less so for general jurisdiction. Jeopardy has zero contacts with Louisiana aside from the activities of unrelated third parties that contracted with CBS and IGT. Jeopardy's licensing and distribution agreements gave CBS and IGT the sole authority to decide in which states to license

and/or distribute the "Jeopardy!" game show, trademark/logo, and merchandise with unrelated third parties. The evidence was uncontroverted that Jeopardy merely owns the intellectual property of the "Jeopardy!" game show and trademark. Jeopardy has no control over where and with whom the licensees, CBS and IGT, choose to market and negotiate distribution of the game show and merchandise. Jeopardy made no intentional or direct contact with Louisiana. Furthermore, each licensing agreement specifically states that Jeopardy is not in a partnership, joint venture, or agency with CBS or IGT.

Therefore, we find that the random, fortuitous, and attenuated contacts with Louisiana, that were initiated by the independent activities of third parties, were simply not sufficient to establish personal jurisdiction over Jeopardy in Louisiana. Moreover, because we find no intentional or direct contact by Jeopardy, there is no reason for Jeopardy to have reasonably anticipated being brought into court in Louisiana. See **Publications International, Ltd. v. Simon & Schuster, Inc.**, 763 F.Supp. 309, 312 (N.D. Ill. 1991) (California television show producer lacked sufficient contact with Illinois to subject it to personal jurisdiction, though producer had sold show to network whose local affiliates broadcast show in Illinois, and the context of the lawsuit was alleged trademark/copyright infringement). See also **Sinclair v. StudioCanal, S.A.**, 709 F.Supp.2d 496, 509 n.8 (E.D. La. 2010) (Courts routinely hold that the mere existence of a licensor-licensee relationship is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction when there is no evidence that the activities of licensees were conducted at the direction of or benefit of the licensor).

## CONCLUSION

For the assigned reasons, we affirm the trial court's judgment granting the declinatory exception raising the objection of lack of personal jurisdiction filed by Jeopardy Productions, Inc. and dismissing the Louisiana Department of Revenue's petition to collect taxes. All costs of this appeal, in the amount of $2,927.00, are

7

assessed to plaintiff/appellant, Kimberly L. Robinson, in her capacity as secretary of the Louisiana Department of Revenue.

**AFFIRMED.**