IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 20-0296

_____

FILED

**November 19, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel.*
THIRD-PARTY DEFENDANT HEALTH PLANS, *et al.*,
Petitioners

v.

THE HONORABLE SHAWN D. NINES,
Presiding Judge Business Court Division, and
MEDTEST LABORATORIES, LLC,
Respondents

And

_____

No. 20-0297

_____

STATE OF WEST VIRGINIA ex rel.
BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., and
HEALTHNOW NEW YORK, INC. D/B/A
BLUECROSS BLUESHIELD OF WESTERN NEW YORK, and
BLUESHIELD OF NORTHEASTERN NEW YORK,
Petitioners

v.

THE HONORABLE SHAWN D. NINES,
Presiding Judge Business Court Division, and
MEDTEST LABORATORIES, LLC,
Respondents

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED
_____

Submitted: October 27, 2020
Filed: November 19, 2020

Andrew B. Cooke, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
James C. Martin, Esq., *Pro Hac Vice*
William J. Sheridan, Esq., *Pro Hac Vice*
Gregory D. Vose, Esq., *Pro Hac Vice*
Reed Smith LLP
Pittsburgh, Pennsylvania
Martin J. Bishop, Esq., *Pro Hac Vice*
Bryan M. Webster, Esq., *Pro Hac Vice*
Daniel J. Hofmeister Jr., Esq.,
*Pro Hac Vice*
Reed Smith LLP
Chicago, Illinois
Counsel for Petitioners
Health Care Service Corporation, A
Mutual Legal Reserve Company
(operating as Blue Cross and Blue
Shield of Texas; Blue Cross and Blue
Shield of Illinois; Blue Cross and Blue
Shield of Montana; Blue Cross and Blue
Shield of Oklahoma; and Blue Cross and
Blue Shield of New Mexico); Blue Cross
and Blue Shield of Alabama; Premera
Blue Cross; Highmark Inc.; Highmark
BCBSD Inc. d/b/a Highmark Blue
Cross and Blue Shield of Delaware; Blue
Cross of Idaho Health Service, Inc.; Blue
Cross and Blue Shield of Kansas City;
Blue Cross and Blue Shield of Nebraska,
Inc.; Noridian Mutual Insurance Company
d/b/a Blue Cross Blue Shield of North

Benjamin L. Bailey, Esq.
Samuel A. Hrko, Esq.
Bailey & Glasser LLP
Charleston, West Virginia
Patrick J. Sheehan, Esq., *Pro Hac Vice*
Henry C. Quillen, Esq., *Pro Hac Vice*
Whatley Kallas, LLP
New York, New York
Counsel for Respondent
MedTest Laboratories, LLC

Melissa Foster Bird, Esq.
Marc. E. Williams, Esq.
Nelson Mullins Riley &
Scarborough LLP
Huntington, West Virginia
N. Thomas Connally, III, Esq.,
*Pro Hac Vice*
Hogan Lovells U.S. LLP
Tysons, Virginia
Counsel for Anthem, Inc.; Blue Cross of
California d/b/a Anthem Blue Cross;
Rocky Mountain Hospital and Medical
Service, Inc. d/b/a Anthem Blue Cross and
Blue Shield, Anthem Blue Cross and Blue
Shield; Anthem Blue Cross and Blue
Shield; Anthem Health Plans, Inc. d/b/a
Anthem Blue Cross and Blue Shield of
Connecticut; Blue Cross and Blue Shield
of Georgia, Inc.; Anthem Insurance
Companies, Inc. d/b/a Anthem Blue Cross

Dakota; Blue Cross Blue Shield of Tennessee, Inc.; Blue Cross & Blue Shield of Wyoming

Eric W. Iskra, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Blue Cross Blue Shield of Michigan; and Capital Blue Cross

Michael J. Joyce, Esq.
Saul Ewing Arnstein & Lehr LLP
Pittsburgh, Pennsylvania
Counsel for Capital Blue Cross

Thomas J. Hurney, Jr., Esq.
Laurie M. Miller, Esq.
Chelsea Creta, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Covert J. Geary, Esq., *Pro Hac Vice*
Jones Walker LLP
New Orleans, Louisiana
Counsel for USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service and Indemnity Company, PAC d/b/a Blue Cross and Blue Shield of Louisiana; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company; Blue Cross and Blue Shield of North Carolina; Blue Cross & Blue Shield of Rhode Island; Blue Cross Blue Shield of South Carolina; California Physicians' Service, Inc. d/b/a Blue Shield of California; Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Oregon; Regence

and Blue Shield of Indiana; Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and Blue Shield of Kentucky; Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield of Maine; HMO Missouri, Inc. d/b/a Anthem Blue Cross and Blue Shield of Missouri; Anthem Blue Cross and Blue Shield of Nevada; Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross and Blue Shield of New Hampshire; Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield; Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Ohio; Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia, Inc.; Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross and Blue Shield of Wisconsin

Andrew B. Cooke, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
Coppersmith Brockelman PLC
Phoenix, Arizona
Counsel for Blue Cross and Blue Shield of Arizona, Inc.

BlueCross BlueShield of Utah; Regence
BlueShield

Paula L. Durst, Esq.
Don C.A. Parker, Esq.
Spilman Thomas & Battle PLLC
Charleston, West Virginia
Honor R. Costello, Esq., *Pro Hac Vice*
Crowell & Moring LLP
New York, New York
Rochelle-Leigh Rosenberg, Esq.,
*Pro Hac Vice*
Crowell & Moring LLP
Washington, D.C.
Counsel for Blue Cross and Blue Shield of
Kansas, Inc. and HealthNow New York
Inc. d/b/a BlueCross BlueShield of
Western New York and BlueShield of
Northeastern New York

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE HUTCHISON dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1.      "When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies." Syl. Pt. 10, *Jennings v. McDougle*, 83 W. Va. 186, 98 S.E. 162 (1919).

2.      "When a defendant files a motion to dismiss for lack of personal jurisdiction under W. Va. R. Civ. P. 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision.  At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction.  If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence." Syl. Pt. 4, *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997).

3.      "The standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice." Syl. Pt. 6, in part, *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997).

4.      "The Due Process Clause of the Fourteenth Amendment to the United States Constitution operates to limit the jurisdiction of a state court to enter a judgment affecting the rights or interests of a nonresident defendant. This due process limitation requires a state court to have personal jurisdiction over the nonresident defendant." Syl. Pt. 1, *Pries v. Watt*, 186 W. Va. 49, 410 S.E.2d 285 (1991).

5.      "A court may assert specific personal jurisdiction over a nonresident defendant to hear claims against the defendant arising out of or relating to the defendant's contacts or activities in the state by which the defendant purposefully avails itself of conducting activities in the state so long as the exercise of jurisdiction is constitutionally fair and reasonable." Syl. Pt. 8, *SER Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 (2016).

6.      "The purposeful availment requirement of specific personal jurisdiction ensures that a defendant will not be haled into a jurisdiction as a result of isolated, fortuitous, or random acts." Syl. Pt. 9, *SER Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 (2016).

7.      "The specific personal jurisdiction fairness and reasonableness inquiry may, in appropriate cases, include, but is not limited to, considering the burden on the defendant, the interests of the state, the interest of the plaintiff in obtaining relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and the shared interests of states in furthering fundamental substantive social policies. The analysis is case specific, and all factors need not be present in all cases." Syl. Pt. 10, *SER Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 (2016).

ARMSTEAD, Chief Justice:

In this original jurisdiction proceeding, Petitioners, out-of-state Blue Cross

Blue Shield Plans ("Blues"),[1] ask this Court to prevent the enforcement of the circuit

---

[1] Petitioners in case no. 20-0296 are Blue Cross and Blue Shield of Alabama; Anthem, Inc.; Health Care Service Corporation, A Mutual Legal Reserve Company; Cambia Health Solutions, Inc.; CareFirst, Inc.; Premera Blue Cross; Blue Cross and Blue Shield of Arizona, Inc.; USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield; Blue Cross of California d/b/a Anthem Blue Cross; California Physicians' Service, Inc. d/b/a Blue Shield of California; Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield; Anthem Blue Cross and Blue Shield; Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Connecticut; Highmark Inc.; Highmark BCBSD Inc. d/b/a Highmark Blue Cross Blue Shield Delaware; Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross of Idaho Health Service, Inc.; Regence BlueShield of Idaho, Inc.; Blue Cross and Blue Shield of Illinois, Inc.; Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana; Wellmark, Inc. d/b/a Wellmark Blue Cross And Blue Shield of Iowa; Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and Blue Shield of Kentucky; Louisiana Health Service and Indemnity Company, PAC d/b/a Blue Cross and Blue Shield of Louisiana; Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield of Maine; CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Michigan; BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota; Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company; HMO Missouri, Inc. d/b/a Anthem Blue Cross and Blue Shield of Missouri; Blue Cross and Blue Shield of Kansas City; Caring for Montanans, Inc. f/k/a Blue Cross Blue Shield of Montana, Inc.; Blue Cross and Blue Shield of Nebraska, Inc.; Anthem Blue Cross and Blue Shield of Nevada; Anthem Health Plans of New Hampshire, Inc., d/b/a Anthem Blue Cross and Blue Shield of New Hampshire; Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey; Blue Cross and Blue Shield of New Mexico Insurance Company; Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield; Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield; Blue Cross and Blue Shield of North Carolina; Noridian Mutual Insurance Company d/b/a Blue Cross Blue Shield of North Dakota; Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Ohio; Blue Cross and Blue Shield of Oklahoma; Regence BlueCross
(continued . . .)

1

court's March 27, 2020, order, and to grant the requested writ of prohibition dismissing them from the underlying civil action for lack of personal jurisdiction. The Blues contend that there is no allegation or evidence showing that they developed or maintained a substantial relationship with West Virginia or purposefully engaged in any forum-related conduct that gave rise to the claims asserted by Respondent MedTest Laboratories ("MedTest"). Therefore, the Blues argue, "any attempt to exercise specific jurisdiction violates the limits due process imposes."

After reviewing all matters of record, including the parties' briefs, oral arguments, and the pertinent authorities, we grant the requested writ of prohibition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This litigation began in October of 2018 when Highmark West Virginia, Inc. ("Highmark"), the Blue Cross Blue Shield health plan operating in West Virginia, sued MedTest, a laboratory testing company located in West Virginia. Highmark alleged that

BlueShield of Oregon; Capital Blue Cross; Independence Hospital Indemnity Plan, Inc.; Triples Salud, Inc.; Blue Cross & Blue Shield of Rhode Island; Blue Cross Blue Shield of South Carolina; Wellmark of South Dakota, Inc. d/b/a Wellmark, Blue Cross and Blue Shield of South Dakota; BlueCross BlueShield of Tennessee, Inc.; Blue Cross and Blue Shield of Texas; Regence BlueCross BlueShield of Utah; Blue Cross and Blue Shield of Vermont; Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia, Inc.; Regence BlueShield; Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross and Blue Shield of Wisconsin; and Blue Cross & Blue Shield of Wyoming. Petitioners in case no. 20-0297 are Blue Cross and Blue Shield of Kansas, Inc.; and HealthNow New York, Inc. d/b/a Blue Cross and Blue Shield of Western New York; and BlueShield of Northeastern New York. For ease of the reader, we refer to, and attribute arguments made by, Petitioners in case nos. 20-0296 and 20-0297 collectively as the "Blues."

2

these "Defendants[2] billed Highmark WV for independent laboratory and diagnostic services that MedTest did not perform." Highmark sought to recover "more than $6 million because of the billing scheme" it alleged MedTest carried out. Highmark set forth seven counts in its complaint: 1) fraudulent misrepresentation and inducement; 2) breach of contract; 3) unjust enrichment; 4) civil conspiracy; 5) joint venture; 6) negligence; and 7) "Piercing the MedTest LLC veil."

MedTest filed an answer, and counterclaimed with breach of contract and negligence claims against Highmark, alleging that

> Highmark WV has breached the Network Agreement by refusing to compensate MedTest for laboratory testing services provided to subscribers of health insurance plans insured or administered by Highmark WV's fellow Blues through their National Networks, including but not limited to, their "Blue Card" networks,[3] despite the fact that the Network Agreement requires it. Highmark WV's breaches of contract have caused MedTest millions of dollars in damages. MedTest therefore brings its Counterclaim for breach of contract to remedy these breaches.

(Footnote added).

MedTest's counterclaim named the Blues as third-party defendants. It asserted four causes of action against Highmark and the Blues: 1) fraudulent misrepresentation and inducement; 2) civil conspiracy; 3) joint venture; and 4) unjust

---

[2] Highmark named certain individuals along with MedTest in its complaint.

[3] According to MedTest, "the BlueCard Program . . . gives members with BlueCard benefits access to medical providers nationwide."

enrichment. These claims are alleged in the alternative, that is, MedTest seeks relief from the Blues only if it cannot recover against Highmark. MedTest's complaint provides:

> In the alternative, at all relevant times, Highmark and its fellow Blues have misrepresented to MedTest, other health care providers and members of their health insurance plans that MedTest was an in-network provider of laboratory testing services, causing those health care providers and members to obtain laboratory testing services from MedTest for which Highmark and its fellow Blues have refused to provide compensation, causing MedTest to incur millions of dollars in losses attributable to laboratory testing services it provided without compensation.

MedTest asserted that the Blues entered into "a series of contracts" that require healthcare providers in West Virginia, including MedTest, to provide services to the Blues' members, and for Highmark to process and pay claims for those services. MedTest explains that when a healthcare provider in West Virginia provides a service to an out-of-state member of the Blues, Highmark is responsible for processing the claim. Highmark, in turn, pays the provider, and is then reimbursed by one of the out-of-state Blues.

MedTest states that this contractual agreement is incorporated by reference in the "Network Agreement" between MedTest and Highmark. The "Network Agreement" provides:

> To the extent that Highmark WV participates in national or interregional networks, Provider shall provide services as defined by said program to persons who have coverage under such programs. Compensation for such services . . . shall be obtained from Highmark WV upon submission of a properly submitted claim form or electronic record/format documenting the services provided.

4

Additionally, MedTest alleged that Highmark and the Blues listed MedTest as an in-network provider on their respective websites. According to MedTest, it "relied on these listings in performing laboratory services to members of health insurance plans insured or administered by Highmark WV's fellow Blues."

MedTest asserted that the circuit court had jurisdiction over "the Defendants" (Highmark and the Blues) for several reasons. First, "all Defendants have significant business in and contacts with West Virginia through national Blue Cross and Blue Shield programs, including the Blue Card Program, in that their members receive laboratory services and other health care services performed in West Virginia." Next, MedTest provided laboratory services to "one or more of each of the Defendants' members under these national programs." Finally, MedTest asserted that "all of the [Blues] have conspired with Highmark WV."[4]

---

[4] Regarding the conspiracy allegations, MedTest contends that

> Highmark WV and its fellow defendants [the Blues] combined, through concerted action, to accomplish an unlawful purpose by devising and perpetrating a fraudulent scheme to induce MedTest to provide laboratory testing services to their health insurance plan members without paying for them, carrying out that scheme by representing to MedTest, other health care providers and their health insurance plan members that MedTest was an in-network provider of laboratory testing services but refusing to compensate MedTest for the provision of such services.

5

The Blues filed a motion to dismiss for lack of personal jurisdiction, asserting that they had no relevant jurisdictional contacts with West Virginia.[5] The circuit court[6] denied the motion to dismiss. It noted that "[i]t has been pled that each of the Blues entered into a series of contracts that require performance in West Virginia by Highmark WV and MedTest." Accordingly, it ruled that in order to participate in the national program described in the pleadings, "the Blues have made a contract to be performed in whole [or] in part, by any party thereto in this state." (Internal quotation omitted). Therefore, the circuit court concluded that MedTest's claims against the Blues satisfied West Virginia's long-arm statutes, W. Va. Code §§ 31D-15-1501(d)(1) (2008), and 31E-14-1401(d)(1) (2008).

The circuit court next considered whether the Blues "have minimum contacts with West Virginia for the purposes of federal due process." It determined that the Blues purposefully availed themselves of the privilege of conducting business in West Virginia

---

[5] This motion was filed pursuant to Rule 12(b)(2) of the West Virginia Rules of Civil Procedure, which provides

> [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person[.]

[6] This matter was referred to the Business Court Division by an administrative order entered by this Court on July 22, 2019.

by listing MedTest as an in-network provider on their website, which the circuit court described as an "online version of the paper directory of providers." The circuit court noted that "it is claimed that [the Blues] held out and advertised to insureds/subscribers that they could send samples to MedTest, a West Virginia Limited Liability Company, and that they would pay for MedTest's services[.]" The circuit court found the foregoing was not random or fortuitous, rather, it was built into the design of the Blues' health plans. Further, it reasoned that because the Blues represented to their subscribers that they could use MedTest's services, the Blues should have been reasonably aware that they could be haled into court in West Virginia.

The circuit court also rejected the Blues' argument that "any connection with West Virginia is not established by the Blues themselves":

> The [circuit] [c]ourt considers the Blues' argument . . . that any connection with West Virginia is not established by the Blues themselves, but only because of their members, or their health care provider, chose to seek medical care in West Virginia or had their laboratory samples sent to MedTest, the West Virginia company at issue here. The [circuit] [c]ourt, however, concludes that these instances of contact with West Virginia could have occurred when a member or their health care provider relied on the Blues' representations in online directories and lists of covered providers that indicated instances of contact with West Virginia would be covered health services. . . . Therefore, the Third-Party Defendants [the Blues] would have created the connection with West Virginia, by putting MedTest on their online directory and/or lists.

7

Next, the circuit court found five "reasonableness" factors weighed in MedTest's favor.[7]  Finally, the circuit court concluded that "because MedTest has pled a claim for conspiracy, it has undoubtedly established jurisdiction here."  Following entry of the circuit court's March 27, 2020 order, the Blues filed the instant writ.[8]

## II. STANDARD OF REVIEW

This Court has provided that "[a] writ of prohibition lies as a matter of right whenever the inferior court (a) has [no] jurisdiction or (b) has jurisdiction but exceeds its legitimate powers[.]" *State ex rel. Farber v. Mazzone*, 213 W. Va. 661, 664, 584 S.E.2d 517, 520 (2003) (Internal citation and quotation omitted).  Further, "[w]hen a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of

---

[7] The circuit court concluded that: 1) there is no burden on the Blues because they "[chose] to do business with companies headquartered in" West Virginia "while building a national network;" 2) West Virginia has an interest in allowing companies located in West Virginia to litigate claims against out-of-state defendants in West Virginia; 3) MedTest has an interest in obtaining relief in West Virginia because it would otherwise have to file suits all across the country; 4) it is more efficient for the judicial system to have these claims heard in one court; and 5) it furthers no substantive social policy to make recovery difficult for MedTest by forcing it to litigate in dozens of jurisdictions. These factors are contained in syllabus point ten of *SER Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 (2016).  We discuss this syllabus point in the "Analysis" section of this Opinion.

[8] Petitioners in case no. 20-0297 filed a renewed motion to dismiss after the circuit court entered its March 27, 2020, order.  The circuit court denied the renewed motion to dismiss "[f]or the reasons contained within the Court's March 27, 2020, Order" on April 14, 2020.

8

right regardless of the existence of other remedies." Syl. Pt. 10, *Jennings v. McDougle*, 83 W. Va. 186, 98 S.E. 162 (1919).

The issue in this case is whether the Blues are subject to the jurisdiction of this State. "Where a court lacks jurisdiction over a nonresident defendant, prohibition is the appropriate remedy to prevent further prosecution of the suit." *Pries v. Watt*, 186 W. Va. 49, 53, 410 S.E.2d 285, 289 (1991). We have held the following with respect to a nonresident defendant's motion to dismiss for lack of personal jurisdiction:

> When a defendant files a motion to dismiss for lack of personal jurisdiction under W. Va. R. Civ. P. 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

Syl. Pt. 4, *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997).

Finally, this Court has held, "[t]he standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice." *Id.*, Syl. Pt. 6 (Internal citation and quotation omitted).

With these standards as guidance, we consider the parties' arguments.

## III. ANALYSIS

The Blues seek to prohibit enforcement of the circuit court's March 27, 2020, order denying their motion to dismiss for lack of personal jurisdiction. We note at the outset that we find the dispositive issue to be whether the Blues' contacts with West Virginia satisfy federal due process. In reviewing this issue, we will examine personal jurisdiction in the context of due process, including a discussion of specific jurisdiction. We will also address the parties' arguments on whether MedTest's conspiracy claim establishes jurisdiction over the Blues.

To establish personal jurisdiction, a plaintiff must show that "the defendant's actions satisfy [West Virginia's] personal jurisdiction statutes" and that the exercise of jurisdiction is consistent with "federal due process." *Nezan v. Aries Techs., Inc.*, 226 W. Va. 631, 637, 704 S.E.2d 631, 637 (2010).[9] The circuit court applied this two-part inquiry and determined that MedTest satisfied both requirements. While the Blues contest both of

---

[9] *See* Syl. Pt. 3, *SER Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 ("'A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in W. Va. Code, 31-1-15 [2015] and W. Va. Code, 56-3-33 [2012]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.' Syllabus point 5, *Abbott v. Owens-Corning Fiberglas Corp.*, 191 W.Va. 198, 444 S.E.2d 285 (1994), *superseded by statute on other grounds as stated in State ex rel. Ford Motor Co. v. Nibert*, 235 W.Va. 235, 773 S.E.2d 1 (2015).").

10

the circuit court's conclusions, we focus mainly on the second part of the test—whether the exercise of jurisdiction over the Blues is consistent with federal due process.[10]

In reviewing whether the exercise of jurisdiction over the Blues is consistent with federal due process, we begin by noting that

> [t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution operates to limit the jurisdiction of a state court to enter a judgment affecting the rights or interests of a nonresident defendant. This due process limitation requires a state court to have personal jurisdiction over the nonresident defendant.

Syl. Pt. 1, *Pries v. Watt*, 186 W. Va. 49, 410 S.E.2d 285.[11]

---

[10] The circuit court found that MedTest satisfied W. Va. Code § 31D-15-1501(d)(1) ("A foreign corporation is deemed to be transacting business in this state if: (1) The corporation makes a contract to be performed, in whole or in part, by any party thereto in this state;"), and W. Va. Code § 31E-14-1401(d)(1) ("A foreign corporation is to be deemed to be conducting affairs in this state if: (1) The corporation makes a contract to be performed, in whole or in part, by any party thereto, in this state;"). It found these statutes were satisfied based on its conclusion that in order to participate in the national program described in the pleadings, "the Blues have made a contract to be performed in whole [or] in part, by any party thereto in this state." The Blues contend this ruling was erroneous because the circuit court did not identify any specific contract and "erred in finding that a nebulous 'series of contracts' was sufficient to establish personal jurisdiction when MedTest did not allege that [the Blues were] a party to any contract requiring performance by a party in West Virginia." Because we conclude that the exercise of jurisdiction over the Blues is not consistent with federal due process, we need not engage in a lengthy discussion of the circuit court's ruling that MedTest satisfied these statutes.

[11] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564 (1980) (the Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts.).

11

As set forth in the seminal case on "minimum contacts," a state may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945) (Citation omitted). The due process standard for determining whether a court may exercise personal jurisdiction over a nonresident involves an examination of the defendant's contacts with the forum state.

Personal jurisdiction may be either general[12] or specific. There is no dispute in the present matter that specific jurisdiction applies. The United States Supreme Court has described specific jurisdiction as follows: "Specific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 283 n. 6, 134 S.Ct. 1115, 1121, n. 6 (2014) (Internal citation and quotation omitted).

This Court has set forth three main inquiries to consider when examining specific jurisdiction: 1) purposeful availment, that is, whether a defendant has purposefully

---

[12] *See* Syl. Pt. 5, *State ex rel. Ford Motor Co. v. McGraw,* 237 W. Va. 573, 788 S.E.2d 319 ("A court may assert general personal jurisdiction over a nonresident corporate defendant to hear any and all claims against it when the corporation's affiliations with the State are so substantial, continuous, and systematic as to render the nonresident corporate defendant essentially at home in the State.").

availed itself of the privilege of conducting activities within the forum; 2) whether the controversy arises out of or relates to the defendant's activities in the forum; and 3) whether the exercise of jurisdiction is reasonable and comports with fair play and justice. This Court discussed these factors in *State ex rel. Ford Motor Co. v. McGraw* ("*Ford*"):

> The inquiry in specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, ——U.S. ——, ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). The specific jurisdiction analysis for determining whether a forum's exercise of jurisdiction over a nonresident defendant meets due process standards is multi-pronged. The first prong requires a determination that the nonresident defendant has minimum contacts with the forum. Establishing minimum contacts involves an examination of whether the defendant purposefully availed itself of the privilege of conducting activities within the forum. Two general methods for assessing minimum contacts for purposes of specific personal jurisdiction are stream of commerce and stream of commerce plus. To meet the second prong, it must be determined that the plaintiff's claims arise out of or relate to the defendant's contacts with the forum. Under the third prong, it must be constitutionally reasonable to assert the jurisdiction so as to comport with fair play and justice. The reasonableness factors were identified in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), and include considering "the burden on the defendant," "the interests of the forum State," "the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 113, 107 S.Ct. at 1033, 94 L.Ed.2d 92 (internal quotations and citation omitted).

*Ford*, 237 W. Va. at 589, 788 S.E.2d at 335.

The Court in *Ford* distilled the foregoing analysis into three syllabus points:

13

A court may assert specific personal jurisdiction over a nonresident defendant to hear claims against the defendant arising out of or relating to the defendant's contacts or activities in the state by which the defendant purposefully avails itself of conducting activities in the state so long as the exercise of jurisdiction is constitutionally fair and reasonable.

The purposeful availment requirement of specific personal jurisdiction ensures that a defendant will not be haled into a jurisdiction as a result of isolated, fortuitous, or random acts.

The specific personal jurisdiction fairness and reasonableness inquiry may, in appropriate cases, include, but is not limited to, considering the burden on the defendant, the interests of the state, the interest of the plaintiff in obtaining relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and the shared interests of states in furthering fundamental substantive social policies. The analysis is case specific, and all factors need not be present in all cases.

*Id.*, Syl. Pts. 8, 9, & 10, 237 W. Va. 573, 788 S.E.2d 319.

As noted by this Court in *Ford*, the United States Supreme Court provided guidance on specific jurisdiction in *Walden*. The Supreme Court in *Walden* emphasized two considerations a court should undertake when analyzing whether the exercise of specific jurisdiction is appropriate. First, "the relationship must arise out of contacts that the defendant himself creates with the forum State. . . . Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." 571 U.S. at 284, 134 S.Ct. at 1122 (Internal citation and quotation omitted). The Court in *Walden* noted that it has "consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by

14

demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (Internal citation and quotation omitted). Similarly, the second consideration the Supreme Court emphasized was that "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. at 285, 134 S.Ct. at 1122.

The Supreme Court addressed specific jurisdiction in another recent case, *Bristol-Myers Squibb Co. v. Superior Court of California*, — U.S. —, 137 S. Ct. 1773 (2017). It held that "[i]n order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* — U.S. at —, 137 S.Ct. at 1780 (Internal citation and quotation omitted). The Court explained,

> [i]n other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.* (internal quotation marks omitted).

*Id.*

The Supreme Court in *Bristol-Myers* noted a variety of interests that must be considered in determining whether personal jurisdiction is present, including the interests of the forum State and the plaintiff in proceeding with the cause of action in the plaintiff's

15

forum of choice. *Id.* While noting these interests, the Supreme Court provided that "the primary concern is the burden on the defendant." *Id.*[13]

With our ruling in *Ford*, and the Supreme Court's ruling in *Walden* and *Bristol-Myers* in mind, we turn to the parties' arguments on the first prong of our specific jurisdiction test—purposeful availment. The Blues contend that there is no allegation or evidence showing that they developed or maintained a substantial relationship with West Virginia or purposefully engaged in any forum-related conduct giving rise to MedTest's claims. Therefore, the Blues claim any attempt to assert specific jurisdiction over them violates the limits due process imposes. Further, according to the Blues, the circuit court

---

[13] The Supreme Court described factors to consider when assessing the burden on the defendant:

> Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. . . . As we explained in *World-Wide Volkswagen*, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.*, at 294, 100 S.Ct. 559.

— U.S. at —, 137 S.Ct. at 1780-1781.

16

arrived at its ruling by erroneously relying on MedTest's and Highmark's forum contacts, combined with the Blues' connections to Highmark under their national BlueCard program, and their plan members' hypothetical connection through their websites. The Blues assert that these connections fall far short of establishing specific jurisdiction over them.

By contrast, MedTest argues that the Blues encourage their members to use healthcare providers in their networks, and advertise that MedTest, a West Virginia company, is in those networks. Further, MedTest asserts that it is required by contract to serve the Blues' members, and to submit claims for its services to Highmark in West Virginia. Pursuant to its contracts with the Blues, Highmark is required to process those claims in West Virginia, and pay MedTest in West Virginia. Per those same contracts, the Blues reimburse Highmark in West Virginia. MedTest asserts that when Highmark and the Blues decided to stop paying for MedTest's services, MedTest was injured in West Virginia. Thus, MedTest states that "[t]here is nothing random, fortuitous, unexpected, unfair, or unconstitutional about making the [Blues] defend claims by MedTest in West Virginia: a state the [Blues] have chosen to incorporate deeply into their business model, and the state at the heart of the conduct giving rise to Med Test's claims."

After review, we find the circuit court erred by concluding that it was proper to exercise specific jurisdiction over the Blues. Under our ruling in *Ford*, and the Supreme Court's ruling in *Walden* and *Bristol-Myers*, we find that the Blues have not purposefully availed themselves of the privilege of conducting business in West Virginia.

17

As noted by the Supreme Court in *Walden*, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." 571 U.S. at 291, 134 S.Ct. at 1126. Stated differently, the question is whether "the defendant's actions connect him to the forum." 571 U.S. at 289, 134 S.Ct. at 1124. None of the Blues have their principal places of business in West Virginia. The Blues have not directly solicited business in West Virginia. They have no offices or employees in West Virginia. "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." 571 U.S. at 585, 134 S.Ct. at 1122. (Internal citation omitted). Similarly, as MedTest concedes in its brief to this Court, none of the Blues have a direct contract with MedTest. As counsel for the Blues noted during oral argument, MedTest has not asserted a breach of contract claim against the Blues.

While the Blues have no physical presence in West Virginia, or any direct contracts with MedTest, the circuit court concluded that purposeful availment was satisfied based on: 1) the injury or potential injury MedTest could suffer by being listed as an in-network provider by the Blues; 2) the Blues' participation in the national BlueCard program; and 3) MedTest being listed as an in-network provider on the Blues' websites. We find these instances cited by the circuit court do not establish purposeful availment.

The circuit court's order provides:

> [The Blues] advertised to their subscribers that they could use MedTest's services and be covered, and [if they] failed to pay for those services, then the [Blues] should have been aware that they could cause injury in West Virginia to the

18

West Virginia corporation and should have reasonably anticipated being haled into court in West Virginia.

We find the potential injury that MedTest could suffer by being listed as an in-network provider is not sufficient to subject the Blues to specific jurisdiction in West Virginia. In *Walden*, the Supreme Court provided that "mere injury to a forum resident is not a sufficient connection to the forum." 571 U.S. at 290, 134 S.Ct. at 1125. It explained that

> [r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum in a meaningful way*.

*Id.* (Emphasis added). Thus, the relevant jurisdictional inquiry is not whether MedTest *could* suffer an injury because the Blues advertised to their subscribers that they could use MedTest's services. Rather, the relevant jurisdictional inquiry is whether the Blues' inclusion of MedTest as an in-network provider in their national network creates a sufficient connection between the Blues and West Virginia to satisfy our purposeful availment test. As discussed below, we conclude it does not.

The mere fact that the Blues participate in a national program, the BlueCard program, does not, by itself, constitute purposeful availment. The Blues assert that "even if a health plan is willing to reimburse for services delivered to its members in other states, the members' choices in seeking that out-of-state treatment do not equate with the health plan directing commercial activity at the other forum." We agree.

19

As noted in a recent decision from a court outside of our jurisdiction:

> Courts throughout the country have addressed similar jurisdictional issues in the healthcare context and have generally held that an insurer or third-party administrator does not avail itself of the privilege of doing business in a particular state simply because the insured chose a medical provider in that particular forum and the insurer or third-party administrator pre-approved treatment or paid medical bills.

*Wiegering v. Blue Cross & Blue Shield of Massachusetts, Inc.,* No. 16-23031-CIV, 2017 WL 1294907, *8 (S.D. Fla. Feb. 2, 2017).

Similarly, the Fifth Circuit held that a Louisiana court lacked personal jurisdiction over an out-of-state insurance company whose insured members sought treatment from the plaintiffs, medical services providers, in Louisiana. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 366-67 (5th Cir. 2010). The insurance company paid the plaintiff in the forum state for rendering services to the insurance company's insured members. *Id.*, 615 F.3d at 369. The court held that the insurance company's "payment of a limited number of claims for treatment of [the insurance company's] insureds, *based on the unilateral decisions of those insureds who sought treatment in Louisiana*, does not establish purposeful contact[.]" 615 F.3d at 369-70 (Emphasis added). The court found that the insurance company "was not attempting to

20

expand sales to Louisiana or otherwise develop commercial activity in Louisiana." 615 F.3d at 370.[14]

Consistent with the foregoing cases, we conclude that participating in the BlueCard Program is not a sufficient basis upon which a West Virginia court may exercise specific jurisdiction over the Blues. The BlueCard Program simply does not constitute the type of deliberate, targeted activity directed at West Virginia sufficient to find purposeful availment. The only direct contract accompanying the Blues' participation in the national program is its agreement to reimburse Highmark for services it provides to Blues' members. However, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185 (1985). Rather, there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.*, 471 U.S. at 475, 105 S.Ct. at 2184. We find there are no actions by the Blues in this case that create a "substantial connection" with West Virginia.

---

[14] *See also D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d. Cir. 2009) ("[Defendant's] efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state. Rather, any connection of [Defendant] to Pennsylvania merely was a derivative benefit of its successful attempt to exploit the United States as a national market."); *Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 583 (D.N.J. 2015) (holding no specific jurisdiction because "the facts here reveal only JMC's intent to serve the U.S. market; there were no marketing or sales efforts directed at the State of New Jersey.").

Next, we find the Blues did not purposefully avail themselves of doing business in West Virginia by listing MedTest as an in-network provider on their websites. The Blues assert that courts have consistently held that "passively providing online information" through a website is not a sufficient basis for a court to exercise specific jurisdiction. The Blues rely on *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002), in which the court addressed factors for determining "when it can be deemed that an out-of-state citizen, through electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes," In *ALS Scan*, the court adopted the approach set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). The court in *Zippo* determined that

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.*, 952 F. Supp. at 1124 (Internal citation omitted).

22

A recent case examining the sliding-scale approach set forth in *Zippo* noted that "[r]egardless of where on the sliding scale a defendant's web-based activity may fall, however, [w]ith respect to specific jurisdiction, the touchstone remains that an out-of-state person has engaged in some activity purposefully directed toward the forum state . . . creating a substantial connection with the forum state." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352-53 (4th Cir. 2020) (internal citation and quotation omitted). The Blues' websites provide a listing of its in-network providers. These websites do not directly or purposefully target West Virginia.

Additionally, MedTest has not alleged that its claims against the Blues stem from interactions between West Virginia residents and the Blues' websites. While the circuit court placed substantial weight on the Blues' websites in finding that purposeful availment was satisfied, MedTest's brief to this Court downplays the significance of the websites, stating, "jurisdiction over the Blues springs from the fundamental design of their system, not their websites."[15]

The Blues are not actively transacting business in West Virginia via their websites, nor is there an allegation that they are directly contacting West Virginia residents via their websites. We therefore conclude that the Blues did not purposefully avail

---

[15] MedTest's brief also provides that it has "never based its claim to jurisdiction on the availability of the Blues' websites in West Virginia. In fact, MedTest never based its claim to jurisdiction specifically on the Blues' websites at all[.]"

themselves of the privilege of conducting business in West Virginia based on MedTest being listed as an in-network provider on their websites.

Based on all of the foregoing, we conclude that the circuit court erred by concluding that the Blues purposefully availed themselves of the privilege of conducting business in West Virginia.[16] For this reason, we also reject the circuit court's determination that because MedTest pled a claim for conspiracy, "it has undoubtedly established jurisdiction here." The circuit court's order does not address this issue in depth.

The conspiracy claim does not alter our jurisdictional analysis. Consistent with the Supreme Court's ruling in *Walden* and *Bristol-Myers*, our main inquiry involves an examination of the Blues' contacts with West Virginia. As the Supreme Court in *Walden* noted, "the relationship must arise out of contacts that the defendant himself creates with the forum State." 571 U.S. at 284, 134 S.Ct. at 1122 (Internal citation and quotation omitted). We have concluded that the Blues have not purposefully availed themselves of the privilege of conducting business in West Virginia. This conclusion is not changed based on the bare allegation that the Blues and Highmark were engaged in a conspiracy. Because we have found an absence of purposeful availment, we find that this

---

[16] Because we find purposeful availment has not been met, we need not examine the remaining two prongs of our specific jurisdiction test— whether the controversy arises out of or relates to the defendant's activities in the forum, and whether the exercise of jurisdiction is reasonable and comports with fair play and justice.

24

would be an especially difficult case to conclude that conspiracy allegations alone can serve

as the basis for exercising personal jurisdiction over the Blues.[17]

Finally, we note that MedTest has argued that no jurisdictional discovery has

taken place and that allowing some discovery would be appropriate if this Court has

"doubts about jurisdiction." In *Bowers v. Wurzberg*, 202 W. Va. 43, 51, 501 S.E.2d 479,

487 (1998), we addressed jurisdictional discovery and provided that "the court generally

should permit limited jurisdictional discovery, unless the court's jurisdiction, *or lack*

*thereof*, is clear." (Emphasis added). Because we conclude that the exercise of specific

---

[17] The Fourth Circuit has recognized that the "conspiracy theory of jurisdiction" can satisfy the first prong of the specific jurisdiction test. In *Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir.2013), the court provided:

> To succeed on this theory, the plaintiffs would have to make a plausible claim (1) that a conspiracy existed; (2) that the four bank defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with Virginia to subject that conspirator to jurisdiction in Virginia. *See Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir.2005); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir.1983) (per curiam). *To satisfy these requirements, the plaintiffs would have to rely on more than "bare allegations." Lolavar*, 430 F.3d at 229 (internal quotation marks omitted); *see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C.Cir.1997) ("[T]he plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy" (internal quotation marks omitted)).

716 F.3d at 329 (Emphasis added).

jurisdiction over the Blues is clearly not appropriate in this case, we decline to remand this matter to the circuit court for jurisdictional discovery.

## IV. CONCLUSION

Accordingly, for the reasons stated above, we find that the Blues are entitled to a writ of prohibition to prohibit the enforcement of the circuit court's March 27, 2020, order denying their motion to dismiss for lack of personal jurisdiction. The circuit court's order is vacated and this case is remanded to the circuit court with directions for it to enter an order dismissing the Blues from this case.

Writ Granted.